**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>GREGORY JOHN TE VELDE<br><br><br>       Debtor. | Case No. 18-11651-A-11 |
| GREGORY JOHN TE VELDE<br><br>       Plaintiff,<br><br>   v.<br><br>RABOBANK N.A., et al.<br><br>       Defendants. | Adv. No. 18-01030-A<br><br>**MEMORANDUM** |

Argued and submitted on August 22, 2018

at Fresno, California

Honorable Fredrick E. Clement, Bankruptcy Judge Presiding

Appearances: Michael Collins, Collins & Collins, LP and Riley C. Walter, Walter Wilhelm Law Group for Gregory te Velde; Richard A. Rogan, Jeffer Mangels Butler & Mitchell LLP for Rabobank, N.A.; Don J. Poole, Wild Carter & Tipton for J.D. Heiskell Holdings, LLC; Stephen P. Arnot, Williams Kastner Greene & Markley for Custom Feed Services, LLC; Craig Tristao, Coleman & Horowitt, LLP for Western Ag Improvements, Inc.; Peter L. Fear, Fear Waddell, P.C. for Cold Springs Veterinary Services, Inc.; and John H. Chambers, Dunn Carney Allen Higgins & Tongue LLP for Scott Harvesting, LLC

Oregon's non-possessory lien statutes provide persons who provide services and suppliers who provide materials a lien against chattels improved so improved. Among those liens are Agricultural Services Liens, Or. Rev. Stat. § 87.226, which extend to crops and animals, their "proceeds," and, in limited instances, to the offspring of those animals. As commonly understood, "proceeds" means monies generated by sale. Does the Agricultural Services Lien extend to milk produced by a cow subject to such a lien?

I. **FACTS**

Gregory te Velde ("te Velde") is a dairyman. He owns three dairies, including Lost Valley Farm in Oregon. Lost Valley Farm delivers the milk it produces to a processor, Columbia River Processing ("Columbia River").

te Velde sought the protections of chapter 11.[1]

Prior to filing bankruptcy, te Velde owed money to Rabobank, N.A., J.D. Heiskell Holdings, LLC, and Overland Stockyard, Inc. (collectively "Consensual Lienholders") and gave each of those creditors a consensual lien against Lost Valley Farm's livestock, crops, milk, milk checks, equipment and other personal property. The aggregate amount due the Consensual Lenders is approximately $78 million.

Also prior to filing bankruptcy, Custom Feed Services, LLC; Western Ag Improvements, Inc.; Cold Springs Veterinary Services, Inc.; and Scott Harvesting, LLC (collectively "ASL Holders") provided goods and/or services to te Velde's Lost Valley Farm dairy. Each of those

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and all "Rule" references are to the Federal Rues of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

2

creditors claim a non-possessory chattel lien under Oregon Revised Statute § 87.226, encumbering Lost Valley Farm's crops and livestock, as well as the sale proceeds of the sales of the crops and livestock. The amount due ASL Holders on the date te Velde sought chapter 11 protection was almost $1.1 million. The ASL Holders served notice of their liens on Columbia River.

Columbia River owes te Velde, dba, Lost Valley Farms approximately $1.2 million for milk delivered to it. Uncertain as to whether te Velde, the Consensual Lienholders or the ASL Holders were entitled to those funds, Columbia River Processing impounded, and continues to hold, those milk proceeds.

## II. PROCEDURE

te Velde brought an action against the Consensual Lienholders and the ASL Holders to determine the nature, extent and validity of the agricultural service liens. Fed. R. Bankr. P. 7001(2). After the defendants answered, the court bifurcated the action into two issues: (1) whether the agricultural service liens attach to milk proceeds ("Attachment Issue"); and (2) all other issues ("Remainder Issues"). The Attachment Issue was tried first on stipulated facts.

## III. JURISDICTION

This court has jurisdiction. 28 U.S.C. §§ 1334, 157(a),(b)(1); General Order No. 182 of the U.S. District Court for the Eastern District of California. This is a core proceeding in which this court may enter final orders and judgment. 28 U.S.C. § 157(b)(2)(K); Rule 7002(2); *In re Washington Coast I, LLC*, 485 B.R. 393, 402-07 (9th Cir. 2012). Even if the matters raised by this adversary proceeding are non-core this court may enter final orders and judgment with the consent of the parties. 11 U.S.C. § 157(c)(1),(2); *Wellness Int'l*

*Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).  Here, the parties have so consented.

**IV.　DISCUSSION**

　　**A.　Oregon's Non-Possessory Statutory Lien Law**

In the first instance, the validity and effect of liens held by creditors against a bankrupt debtor are determined by state law.  *In re Southern California Plastics, Inc.*, 165 F.3d 1243, 1247 (9th Cir. 1999); *In re Copper King Inn, Inc.*, 918 F.2d 1404, 1407 (9th Cir. 1990); *Tri-State Livestock Credit Corp. v. Ellsworth (In re Ellsworth)*, 722 F.2d 1448, 1450 (9th Cir. 1984); 11 U.S.C. § 506.

Oregon's non-possessory lien statutes balance the rights of property owners and workmen/material suppliers. Or. Rev. Stat. §§ 87.216-87.350.  Comprised of 27 different sections, the non-possessory lien statutes protect persons who have performed services or furnished goods that improve the personal property of others by providing them an inexpensive and expeditious means for collecting monies owed.  At the same time, they protect chattel owners from frivolous or inflated claims by affording owners notice and the opportunity to be heard and protect potential purchasers of the chattel involved by providing notice to purchasers of the workmen's lien. Or. Rev. Stat. §§ 87.216-87.350.  Four categories of persons are protected by non-possessory chattel liens: (1) those who make, repair, transport or store the personal property of others; (2) those who log another's land or who handle, manufacture or transport wood belonging to others; (3) those persons who perform services or furnish goods for farms, ranches and dairies that aid in the production of crops or raising of animals; and (4) those who catch, handle or transport fish for others.  Persons claiming such a lien record notice with the county recorder, notify

the owner of the chattel subject to the lien, and then foreclose the lien. Liens may be foreclosed by advertisement and sale or by suit.

Two sections govern this dispute. Oregon Revised Statute § 87.236 provides the rule of decision applicable to all workmen's non-possessory liens:

> (1) The liens created by **ORS 87.216 to 87.232 [which include Agricultural Service Liens] attach to the chattels described** in those sections.
>
> (2) The liens created by ORS 87.222 and 87.232 [which exclude Agricultural Service Liens] shall also attach to the proceeds of the sale of the chattels subject to those liens if:
>
> > (a) Prior to the filing of the notice of claim of lien, the chattels or any part thereof are sold or delivered to an agent, broker, cooperative agency or other person to be sold or otherwise disposed of; and
> >
> > (b) At the time the purchaser, agent, broker, cooperative agency or other person is notified of the filing of the claim of lien by delivery of a true copy thereof, the proceeds that were received or will be received from the sale or other disposal of the chattels have not been delivered to the owner of the chattels.

Or. Rev. Stat. § 823.236(1)-(2) (emphasis added).

Known as "Agricultural Services Liens," Or. Rev. Stat. §87.226, is specific to liens arising from labor performed or materials provided to farms, ranches, orchards and dairies. As pertinent here, it provides:

> (1) **A person who performs labor, supplies materials or provides services** on farmland, range, ranch, orchard or in that person's place of business to aid the growing or harvesting of crops or the raising of animals **has a lien upon the crops or animals** for the reasonable or agreed charges for labor, materials or services. **The lien upon crops or animals created by this section also attaches to the proceeds of the crops or animals and to the unborn progeny of the animals that are in utero on the date a notice of claim of lien is filed.**

5

> (2) If the lien claimed under subsection (1) of this section is for stud or artificial insemination services, the lien attaches only to the female animal to which the male animal is let or which is artificially inseminated, and the offspring.
>
> (3) The lien on crops and the proceeds thereof attaches on the date a person performs labor, delivers materials or provides services to aid the growing or harvesting of crops. **The lien on animals and the proceeds thereof attaches on the date a person performs labor, delivers materials or provides services to aid the raising of animals, or in the case of unborn progeny, attaches on the date the claim of lien is filed.**

Or. Rev. Stat. § 87.226(1)-(3) (emphasis added).

The non-possessory chattels lien laws define some, but not all, of the operative terms. Or. Rev. Stat. §§ 87.005, 87.142, 87.226(4). Animal means "any mammal, bird, fish, reptile, amphibian or insect." Or. Rev. Stat. § 87.142(1). "Chattel includes movable objects that are capable of being owned, but does not include personal rights not reduced to possession but recoverable by an action at law or suit in equity, money, evidence of debt and negotiable instruments." Or. Rev. Stat. § 87.142(1)-(2).

"Proceeds" is not a defined term, and no known case has construed its meaning within the confines of Oregon Revised Statute § 87.226(1).

B. Rules of Construction

In construing its statutes, Oregon courts place a premium on ascertaining legislative intent and, wherever possible, interpreting statutes consistent with that intent. Or. Rev. Stat. § 174.020. In determining intent, Oregon courts employ a three-step process. First, courts examine the "text and context" of the statute. If legislative intent is clear, no further inquiry is necessary. Second, courts

6

consider legislative history. Third, if and only if legislative intent remains unclear after the first two levels of analysis, the court may "resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *State v. Gains*, 346 Or. 160, 164-65 (2009), citing *PGE v. Bureau of Labor and Industries*, 317 Or. 606, 610-12 (1993).

      **C.    "Proceeds" Does Not Include Milk or the Money It Brings Upon Sale**

Text and context reveal a legislative intent that the agricultural services lien reaches only crops and animals, the proceeds of crops or animals generated by their sale or similar disposition and, in limited instances, the products of crops or animals, *viz.*, unborn progeny of animals that are in utero on the date a notice of lien is filed and in the case of stud or artificial insemination services, offspring.

The text of the statute points to such an interpretation. Section 87.236(1) provides the rule: non-possessory liens attach only to chattels. Or. Rev. Stat. § 87.236(1) ("liens created by ORS 87.216 to 87.232 attach to the chattels described . . ."). Chattels "includes movable objects that are capable of being owned, but does not include personal rights not reduced to possession but recoverable by an action at law or suit in equity, money, evidence of debt and negotiable instruments." Or. Rev. Stat. § 87.142(2).

Oregon Revised Statute § 87.226 expands the reach of the agricultural services lien to collateral beyond the chattel improved to "proceeds" and specified products, *i.e.*, unborn, in utero animals as of the date the notice of lien was filed and all offspring of animals who received stud or artificial insemination services.

7

1　　　Consider the plain meaning of the words used, and not used, by
2　the legislature in defining the reach of an Agricultural Service Lien
3　beyond the chattel itself. "[P]roceeds," a noun, means "the total
4　amount brought in <the proceeds of a sale>." *Webster's New Explorer*
5　*Encyclopedic Dictionary* 1457 (ed. 2006). In contrast, "proceed," an
6　intransitive verb, means "to come from a source: issue." *Id.* The use
7　of the noun form over the intransitive verb suggests the more limited
8　meaning. Moreover, "product," a noun, means "something produced" or
9　"something resulting from." *Id.* at 1459.
10　　　The text does not support a finding that milk, or monies from its
11　sale, are proceeds or a product within the meaning of Oregon Revised
12　Statutes § 87.226. In common parlance, milk is a product, not a
13　proceed, and § 87.226 narrowly tailors the circumstances in which
14　agricultural service liens attach to products, i.e., unborn progeny
15　and offspring of stud/artificial insemination services. This is not
16　one of those circumstances. Or. Rev. Stat. § 87.226(1)-(2). It is
17　also not a "proceed." Proceeds means monies generated by sale or
18　similar disposition. Or. Rev. Stat. § 87.236(2) (liens "also attach
19　to the proceeds of the sale of the chattels."). Finding the common
20　meaning of "proceeds" and its usage within the statue aligned, this
21　court finds that "proceeds" means monies generated by the sale, or
22　similar disposition, of the chattel subject to the lien, but not to
23　products, except as expressly stated.
24　　　Context supports such a narrow reading. Section 87.226 adopts a
25　snapshot approach to liens. The lien attaches on the date the person
26　performs the labor or delivers materials. Or. Rev. Stat. § 87.226(3)
27　("The lien on animals and the proceeds thereof attaches on the date a
28　person performs labor, delivers materials or provides services to aid

the raising of animals, or in the case of unborn progeny, attaches on the date the claim of lien is filed."). That lien extends to chattels in existence on the date the lien attaches or, in the narrowest circumstances, their products or proceeds. *See e.g.,* Or. Rev. Stat. § 87.226(1) (unborn progeny in utero when the notice of lien is filed); Or. Rev. Stat. § 87.226(2) (offspring born as the result of stud or artificial insemination services); Or. Rev. Stat. § 87.236(2) (proceeds of the sale of chattels before notice of lien is filed and then only if the buyer has not yet paid for those chattels). This suggests a narrow construction of the forward-looking provisions of Or. Rev. Stat. § 87.226.

Moreover, a narrow reading of proceeds in Oregon Revised Statute § 87.226(1) is consistent with the remainder of the non-possessory lien laws. As a rule, those statutes attach liens only to the first-generation works of improvement arising from the good or service provided. Or. Rev. Stat. § 87.236(1) (liens attach "to the chattels described"); *see also,* Or. Rev. Stat. § 87.216 (lien on "that chattel"), Or. Rev. Stat. § 87.222 (lien upon "those timbers and those wood products"); Or. Rev. Stat. § 87.232 (lien on "the fish"). Those statutes only recognize non-possessory chattel liens in limited circumstances.

As a result, "proceeds" as that term is used in Oregon Revised Statutes § 87.226(1) does not attach to milk, or to the monies generated by its sale, produced by a cow encumbered by an Agricultural Service Lien.

V. **CONCLUSION**

For each of these reasons, judgment will be for plaintiff Gregory te Velde and will specify that the milk proceeds held by Columbia

River Processing in the approximate amount of $1.2 million are not subject to the lien of ASL Lienholders. The court will issue a separate judgment on the Attachment Issue, as authorized by Fed. R. Civ. P. 54(b), *incorporated by* Fed. R. Bankr. P. 7054(a).

Dated: August 23, 2018

_____
Fredrick E. Clement
United States Bankruptcy Judge

# Instructions to Clerk of Court
## Service List – Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC.

Gregory John te Velde
5850 Avenue 160
Tipton CA 93272

Bao M. Vu
Three Embarcadero Center, Suite 1120
San Francisco CA 94111

Bennett G. Young
1 Embarcadero Center #400
San Francisco CA 94111-3619

Craig A. Tristao
499 W. Shaw Avenue, Suite 116
Fresno CA 93704

Don J. Pool
246 W. Shaw Avenue
Fresno CA 93704

John H. Chambers
851 SW 6th Ave #1500
Portland OR 97204

Learon John Bird
760 SW 9th Ave #3000
Portland OR 97205

Matthew P. Bunting
205 E. River Park Circle, Ste. 410
Fresno CA 93720

Michael B. Collins
PO Box 1457
Pendleton OR 97801

Peter L. Fear
7650 N. Palm Ave., Ste. 101
Fresno CA 93711

Riley C. Walter
205 E. River Park Circle, Ste. 410
Fresno CA 93720

Rissa A. Stuart
219 N Douty St
Hanford CA 93230

Stephen P. Arnot
1515 SW Fifth Avenue, #600
Portland OR 97201

Vaughn C. Taus
1042 Pacific St #D
San Luis Obispo CA 93401